IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL NELSON, | No. 4:22-CV-00686 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| C. HAUSER, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

DECEMBER 12, 2023

Plaintiff Michael Nelson, an inmate in state custody, filed the instant *pro se* action under 42 U.S.C. § 1983[1] regarding events that allegedly occurred while he was confined at the State Correctional Institution, Mahanoy (SCI Mahanoy), in Frackville, Pennsylvania. Nelson claims that several SCI Mahanoy medical providers violated his Eighth Amendment rights regarding his medical care. Presently pending are Defendants' motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court will grant Defendants' Rule 56 motions.

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

I.  **FACTUAL BACKGROUND**[2]

At all times relevant to the instant case, Nelson was incarcerated at SCI Mahanoy in the Diversionary Treatment Unit (DTU).[3] Nelson claims that, during a one-week period in the DTU in September 2021, five nurses—Yarisa Polanco, Marissa Redick, Angela Landmesser, Amy Silinskie, and Victor Lwekamaw—failed to dispense his afternoon medication "Geodon."[4] He additionally contends that C. Hauser, the Corrections Health Care Administrator, was informed about the nursing staff's shortcomings and failed to take corrective action.[5]

Nelson filed suit in May 2022.[6] He primarily asserted Section 1983 claims sounding in deliberate indifference to serious medical needs.[7] His allegations involved purported failure to dispense afternoon Geodon on September 15 (by Polanco), 16 (by Redick), 18 (by Landmesser), 19 (by Silinskie), 20 (by Lwekamaw), and 21 (also by Lwekamaw).[8] He also appeared to assert state-law

---

[2] Local Rule of Court 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.* Defendants filed their statements of material facts concurrently with their Rule 56 motions. *See* Docs. 121, 123. Nelson has not responded to either statement of facts. Accordingly, Defendants' statements of facts will be deemed admitted unless plainly contradicted by the record. *See* LOCAL RULE OF COURT 56.1.
[3] Doc. 123 ¶ 2.
[4] *See* Doc. 106 at 2. According to Nelson's medical records, it appears that he was receiving a generic version of Geodon, "ziprasidone." *See* Doc. 123-4 at 2.
[5] *See* Doc. 106 at 2.
[6] *See generally* Doc. 1.
[7] *See* Doc. 106 at 3.
[8] *See id.* at 2, 7-8 & n.39.

negligence and medical malpractice claims against all Defendants.[9]  Nelson requested millions of dollars in compensatory damages and also sought unspecified punitive, injunctive, and declaratory relief.[10]

Defendants moved to dismiss Nelson's complaint, targeting only his federal Section 1983 claims and the relief requested.[11]  The Court granted those motions in part and denied them in part.[12]  Specifically, the Court denied Defendants' Rule 12(b)(6) motions with respect to Nelson's Eighth Amendment medical indifference claims against all Defendants except Lwekamaw.[13]  The Court then *sua sponte* dismissed Nelson's state-law negligence claims, as it was clear that Defendants' alleged conduct was performed within the scope of their employment and was thus statutorily immune from Nelson's negligence claims.[14]  The Court likewise *sua sponte* dismissed Nelson's state-law medical malpractice claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), as he had failed to plead any type of compensable physical injury from the alleged malpractice, as required by Pennsylvania law.[15]  Consequently, only Nelson's Eighth Amendment medical indifference claims remained against five defendants: Polanco, Redick, Landmesser, Silinskie, and Hauser.

---

[9] *See id.* at 2.
[10] *See id.* at 4.
[11] *See generally* Docs. 42, 82, 87.
[12] *See generally* Docs. 106, 107.
[13] *See* Doc. 106 at 6-9.
[14] *See id.* at 9-10.
[15] *See id.* at 10-11.

The Court next addressed Nelson's various claims for relief. First, the Court determined that Nelson was barred from recovering compensatory damages under Section 1983 because he had not pled that he suffered a physical injury from the alleged short-term denial of Geodon.[16] Punitive damages were likewise ruled out because Nelson's allegations involving failure to provide a single dose of a prescription medication simply did not implicate the type of "callous" or "malicious" conduct or "evil motive or intent" required for such damages.[17] Lastly, although Nelson claimed that he was seeking unspecified "injunctive relief," the Court noted that his separate motions for preliminary injunctive relief had been denied and that his claims implicated a finite window of treatment in September 2021, thus mooting any request for prospective or permanent injunctive relief.[18] Nelson's recovery in the instant case was accordingly limited to the possibility of declaratory relief or nominal damages only.[19]

Defendants now move for summary judgment on Nelson's remaining Eighth Amendment claims, primarily relying on his failure to exhaust administrative remedies.[20] Nelson concedes that nearly all his claims are unexhausted and therefore most of Defendants' Rule 56 motions must be granted, but maintains that

---

[16] *See id.* at 12.
[17] *See id.*
[18] *See id.* at 12-13.
[19] *See id.* at 13.
[20] *See generally* Docs. 119, 122.

he can survive Rule 56 scrutiny with respect to his Eighth Amendment claim against Redick.[21]  Defendants' Rule 56 motions are ripe for disposition.

## II.  STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[22]  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[23]  Material facts are those "that could alter the outcome" of the litigation, and "disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[24]

At the Rule 56 stage, the Court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial."[25]  The Court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor."[26]  This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving

---

[21] *See* Doc. 138 at 1.
[22] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[23] FED. R. CIV. P. 56(a).
[24] *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (*quoting Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).
[25] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[26] *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014).

party on the claim or claims at issue.[27]  A "scintilla of evidence" supporting the nonmovant's position is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]."[28]  Succinctly stated, summary judgment is "put up or shut up time" for the nonmoving party.[29]

### III. DISCUSSION

Defendants contend that Nelson failed to exhaust his administrative remedies.  They alternatively argue that, even if the Court were to reach the merits of Nelson's Eighth Amendment claims, those claims cannot survive Rule 56 scrutiny.  The Court will consider each argument in turn.

#### A. Administrative Exhaustion

The Prison Litigation Reform Act of 1995 (PLRA)[30] requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations.[31]  Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be granted by the administrative system.[32]  The exhaustion process a prisoner must follow is

---

[27] *Liberty Lobby*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986).
[28] *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252) (alteration in original).
[29] *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Berkeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).
[30] 42 U.S.C. § 1997e *et seq*.
[31] *See* 42 U.S.C. § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted).
[32] *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

governed by the contours of the prison grievance system in effect where the inmate is incarcerated.[33]

Pennsylvania's Department of Corrections (DOC) employs a three-step grievance process that must be completed to properly exhaust administrative remedies in most cases.[34] If informal resolution attempts do not solve the problem, the first step is to file a written grievance (using form DC-804, Part 1) with the Facility Grievance Coordinator within 15 working days after "the event upon which the claim is based."[35] An adverse decision by the grievance coordinator must be appealed to the Facility Manager within 15 working days of the initial-review response or rejection.[36] Finally, an adverse decision by the Facility Manager must be appealed to "Final Review" with the Secretary's Office of Inmate Grievances and Appeals (SOIGA), and again must be submitted within 15 working days of the date of the Facility Manager's decision.[37]

The DOC has specific requirements for grievances submitted by inmates. Those requirements include, among other things, that the grievance "be legible [and] understandable"; "include a statement of the facts relevant to the claim" as well as "the date, approximate time, and location of the event(s) that gave rise to

---

[33] *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Woodford*, 548 U.S. at 90-91.
[34] *See Booth v. Churner*, 206 F.3d 289, 292 n.2 (3d Cir. 2002); COMMONWEALTH OF PA., DEP'T OF CORR., INMATE GRIEVANCE SYS., Policy No. DC-ADM 804 (May 1, 2015) (hereinafter "DC-ADM 804").
[35] DC-ADM 804 § 1(A)(3)-(5).
[36] *Id.* § 2(A)(1).
[37] *Id.* § 2(B)(1).

7

the grievance"; that the prisoner "identify individuals directly involved in the event(s)"; and that the grievance include "the specific relief sought," including "compensation or other legal relief normally available from a court."[38]

The Court need not expend significant time on the Rule 56 motions with respect to defendants Polanco, Silinskie, Hauser, and Landmesser. Nelson does not oppose their motions for summary judgment; in fact, he explicitly concedes that he did not exhaust any Section 1983 claim against them and thus summary judgment should be granted in their favor.[39] Nelson maintains, however, that he exhausted his medical indifference claim against Redick and it should be "allowed to go [to] trial."[40] The Court will therefore examine whether Nelson exhausted his Eighth Amendment claim against Redick.

It is undisputed that only one grievance was filed and appealed to final review with the SOIGA that is relevant to the claims in this case: grievance number 946717.[41] Nelson even attached the SOIGA's final denial of this grievance to his complaint.[42] Nelson filed grievance 946717 on September 18, 2021, and it was received by the grievance coordinator on September 21, 2021.[43] His grievance alleges as follows:

---

[38] *Id.* § 1(A)(11).
[39] *See* Doc. 138 at 1 (conceding that summary judgment should be granted in favor of all Defendants except Redick).
[40] *See id.*
[41] *See* Doc. 123 ¶¶ 9-13; Doc. 121 ¶ 3.
[42] *See* Doc. 1-27.
[43] *See* Doc. 123-3 at 1.

> On 9-16-21 Medical personal [sic] said that I refused my medication that was never off[ered.] Unit Correctional Officer called medical a number of times for my medication, but I never got them [sic]. On 9-17-21 the Correctional Officers notified Unit Psychologist for H-Block Ms. G that I not [sic] offer [sic] my medication, so couldn't [sic] have refused. This is a [sic] intentional denial of treatment once prescribed to my serious mental Illness and Deliberate Indifference. I'm humbly requesting $250,000.00 in punitive damages.[44]

This grievance was fully investigated, appealed all the way to the SOIGA, and denied on the merits.[45]

As noted above, proper exhaustion under Pennsylvania DOC policy requires that initial grievances explicitly identify "the specific relief sought," including "compensation or *other legal relief* normally available from a court."[46] It is plainly evident that the only relief Nelson requested in his grievance was "$250,000.00 in punitive damages."[47] He did not request compensatory damages (likely because there was no injury), declaratory or injunctive relief, or nominal damages.

The problem for Nelson, as this Court has previously explained,[48] is that the failure of a nurse to dispense a single dose of a prescription medication on one day simply does not "implicate the type of 'callous' or 'malicious' conduct or 'evil motive or intent' required for punitive damages to be available."[49] Consequently,

---

[44]  *Id.*
[45]  *See generally* Doc. 123-3.
[46]  DC-ADM 804 § 1(A)(11)(d) (emphasis supplied).
[47]  *Id.*
[48]  *See* Doc. 106 at 12.
[49]  *Id.* (citing *Springer v. Henry*, 435 F.3d 268, 281 (3d Cir. 2006); *Allah v. Al-Hafeez*, 226 F.3d 247, 251 (3d Cir. 2000) (citing *Coleman v. Kaye*, 87 F.3d 1491, 1497 (3d Cir. 1996))).

9

Nelson failed to exhaust his administrative remedies with respect to the only types of relief possibly available in the instant lawsuit, *i.e.*, declaratory relief or nominal damages.[50]

### B. Eighth Amendment Medical Indifference

Assuming that Nelson fully exhausted his Eighth Amendment claim against Redick (including any relief sought), that claim still fails on the merits.

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."[51] To establish an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."[52] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[53]

---

[50] The Court observes that under Third Circuit precedent, nominal damages do not need to be alleged in the complaint. *See Mitchell v. Horn*, 318 F.3d 523, 533 n.8 (3d Cir. 2003) (citing *Allah v. Al-Hafeez*, 226 F.3d 247, 251 (3d Cir. 2000)). Consequently, it is unclear whether a request for such damages must be administratively exhausted. *But cf. Everett v. Robinson*, 2023 WL 6458850 (3d Cir. 2023) (nonprecedential) (finding that claims for "monetary damages and injunctive relief" were procedurally defaulted because they were not raised in prisoner's "*initial* grievance, as required by DC-ADM 804" and because prisoner failed to complete DOC's appeal process).
[51] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).
[52] *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).
[53] *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, or denial of reasonable requests for treatment resulting in suffering or risk of injury.[54] Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain."[55] Claims sounding in mere medical negligence will not suffice.[56]

Nelson claims that Redick never offered him Geodon on the afternoon of September 16, 2021. Nelson, however, has failed to carry his burden at summary judgment because he has not identified any evidence that would rebut Defendants' contention (and supporting evidence) that there was no Eighth Amendment violation by Redick on September 16. Nelson has not, for example, proffered a declaration or affidavit, medical records, witness statements, or any other competent evidence that could sustain a verdict in his favor. He instead cites to several pages of the documentary evidence Defendants provided in support of their Rule 56 motion. These minimal citations are unpersuasive.

Nelson first claims that, on page 2 of CM/ECF Document 123-3, "line 5 states Plaintiff refused his 4:30pm Geod[o]n" on September 16, but then "in line

---

[54] *See Durmer v. O'Carroll*, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting *Lanzaro*, 834 F.2d at 346).
[55] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).
[56] *Rouse*, 182 F.3d at 197.

10 . . . it states that [he] was compliant with morning and evening medication[.]"[57] Nelson posits that lines 5 and 10 of the grievance coordinator's initial review response (Doc. 123-3 at 2) are therefore "inconsistent."[58]

There is nothing inconsistent about lines 5 and 10 of the initial review response. Nelson receives various medications in the morning (6:30 a.m.), afternoon (4:30 p.m.), and evening (7:00 p.m.).[59] The fact that he was compliant with his "morning and evening" medications on September 16 does not contradict the grievance coordinator's assertion that he was noncompliant and refused his *afternoon* Geodon that day.

Nelson next points to page 2 of CM/ECF Document 123-4, contending that it "clearly confirms Defendant Redick dispensed [his] 4:30pm Geod[o]n" on September 16, thereby creating a discrepancy (and dispute of fact) with the grievance coordinator's initial review response (Doc. 123-3 at 2) and his Drug Administration History Report (Doc. 123-6 at 11), which both indicate that he refused his afternoon Geodon that day.[60] But Nelson is again mistaken. On page 2 of CM/ECF Document 123-4, which contains Nelson's detailed prescription medication records for September 2021, the entry on the 4:30 p.m. or "afternoon" Geodon block for September 16 contains an "MR" for "Marissa Redick" and,

---

[57] Doc. 138 ¶ 2.
[58] *See id.* ¶¶ 2, 9.
[59] *See generally* Doc. 123-4.
[60] *Id.* ¶¶ 2-4, 6-7, 9.

beneath those initials, an "R" that indicates that Geodon was "refused."[61] Hence, there is no inconsistency in the records. Rather, the records submitted by Defendants on which Nelson relies all unequivocally reflect that Nelson refused his afternoon Geodon on September 16, 2021, not that it was never offered to him as he alleges. Nelson, therefore, has failed to provide or point to *any* evidence that would support his Eighth Amendment medical indifference claim against Redick.

Furthermore, because Nelson failed to comply with Local Rule 56.1, Defendants' statements of fact are deemed admitted.[62] Upon Nelson's admission of these material facts, it follows that Nelson cannot succeed on his Eighth Amendment claim against Redick. The undisputed, admitted facts establish that (1) Nelson cannot produce any competent admissible evidence to support his allegation that Redick took any action to deny him medical treatment[63]; (2) Nelson cannot produce any competent admissible evidence to support his allegation that Redick took any action to delay his medical treatment[64]; (3) Nelson cannot produce any competent admissible evidence to support his allegation that Redick refused to provide him with any prescribed medical treatment[65]; and (4) Nelson cannot produce any competent admissible evidence to support his allegation that Redick

---

[61] *See* Doc. 123-4 at 2 (Geodon entry for September 16, 2021, 16:30 hours).
[62] *See* LOCAL RULE OF COURT 56.1.
[63] Doc. 123 ¶ 20(b).
[64] *Id.* ¶ 20(c).
[65] *Id.* ¶ 20(d).

had reason to believe or actual knowledge that Nelson was being denied treatment or otherwise mistreated by medical providers.[66]

Under these admitted facts, and with no evidence to the contrary, no reasonable juror could find in Nelson's favor on his Eighth Amendment claim against Redick. The Court, therefore, must grant Redick's motion for summary judgment.

## IV. CONCLUSION

Based on the foregoing, the Court will grant Defendants' motions for summary judgment. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[66] *Id.* ¶ 21(b).